# 23-6715-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

PEDRO CHINNERY, STAN JONES, DAVID McCRONE,
JASON BRANDT, AKA Sealed Defendant 1,

*Defendants,*

JERMAINE LIGHTFOOT,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## MOTION FOR RECONSIDERATION OR RECONSIDERATION EN BANC

PAUL SKIP LAISURE
*Attorney for Defendant-Appellant*
1225 Franklin Avenue, Suite 325
Garden City, New York 11530
(571) 477-1003

COUNSEL PRESS    (800) 4-APPEAL • (326027)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT PURSUANT TO FEDERAL RULE OF
APPELLATE PROCEDURE 35(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    The Plea Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    The Change of Plea . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    The *Fatico* Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT

    THE PANEL'S CONCLUSION THAT APPELLANT FAILED TO
    DEMONSTRATE THAT HIS WAIVER OF APPEAL WAS
    UNENFORCEABLE MISAPPREHENDED THE IMPORTANCE OF
    FACTS APPEARING IN THE RECORD: THAT THE
    GOVERNMENT HAD INTENTIONALLY AVOIDED INFORMING
    THE DEFENSE OF ITS INTENT TO USE RAPE ALLEGATIONS
    TO ENHANCE APPELLANT'S DRUG OFFENSE SENTENCE AND
    THAT HE WOULD HAVE PLEADED GUILTY TO THE
    INDICTMENT RATHER THAN PURSUANT TO THE PLEA
    AGREEMENT HAD HE KNOWN ABOUT THE GOVERNMENT'S
    INTENT TO USE THE RAPE ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ADDENDUM

    Order dismissing appeal, dated August 16, 2024

i

TABLE OF AUTHORITIES

CASES                                                                    PAGE

*United States v. Helm*
58 F.4th 75 (2d Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

## STATEMENT PURSUANT TO FEDERAL RULE OF APPELLATE PROCECURE 35(B)

The panel decision involves a question of exceptional importance: whether a defendant who is not informed of the Government's intent to use non-drug-crime allegations to enhance his drug crime sentence, and who would have pleaded guilty to the indictment rather than entering a plea agreement had he been so informed, has nevertheless waived his right to raise that claim on appeal by agreeing to a general waiver of appeal provision.

## STATEMENT OF FACTS

Appellant Jermaine Lightfoot was charged with two counts of narcotics conspiracy (21 U.S.C. § 841(a)(1)); one count of narcotics possession with intent to distribute (21 U.S.C. § 841(a)(1) & 841(b)(1)(a)); and one count of possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)(1)(A)(i) & §924(c)(2)).

The Plea Agreement

On September 27, 2022, newly-assigned counsel for Mr. Lightfoot and the Government reached an agreement by which Mr. Lightfoot would plead guilty to one count of possessing narcotics with the intent to distribute (A 40). That count carried a mandatory minimum term of 10 years in prison and a maximum of life in prison. In exchange, the Government agreed not to prosecute Mr. Lightfoot for conspiring to

1

distribute cocaine or methamphetamine through June 2021 and, at sentencing, would move to dismiss all open counts against Mr. Lightfoot (A 40). The agreement specified that such conspiracy to distribute conduct could be used by the Government as the basis for sentence enhancement arguments (A 40). The agreement was silent as to the Government's use of non-narcotics-related bad acts as a basis for sentence enhancement arguments.

The parties agreed, on the basis of two prior narcotics convictions, that Mr. Lightfoot had 6 criminal history points and a Criminal History Category of III (A 43-43). The parties also agreed that the stipulated sentencing Guidelines range was 360 months to life in prison and they would not to seek an upward or downward departure from that range (A 43). The parties were free, however, to argue for a sentence outside the stipulated guidelines range based on 18 U.S.C. § 3553(a) sentencing factors (A 43). The Agreement specified that either party was free to "present to the Probation Office or the Court any facts relevant to sentencing" and that the Sentencing Court was not bound by the stipulated sentencing range and was free to impose any sentence within or outside the guidelines "up to and including the statutory maximum sentence" (A 44).

The Plea Agreement also contained an appeal waiver:

> It is agreed (i) that the defendant will not file a direct appeal, nor bring a collateral challenge, including but not limited to an application under Title 28 United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range 360 months to life

2

> imprisonment . . . "even if the Court employs a Guidelines analysis different from that stipulated to herein."
>
> *   *   *
>
> The defendant also agrees not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum . . . . any fine that is less than or equal to $10,000.000 . . . any forfeiture amount that is less than or equal to $1,47,000, [or] . . . . any special assessment equal to or less than $100 (A 44-45).

The Change of Plea

After the District Court concluded that Mr. Lightfoot was competent to enter a plea (A 174), the court explained Mr. Lightfoot's *Boykin* rights and confirmed that Mr. Lightfoot had read and understood the charges against him, including the elements of the count to which he was pleading guilty (A 177-78)

The District Court also confirmed that Mr. Lightfoot had read and understood the plea agreement, had discussed the Sentencing Guidelines calculation with counsel and understood it, and that the court reserved the authority to impose a sentence within or outside of the stipulated Guidelines range.  Finally, the court confirmed that Mr. Lightfoot understood that he could not appeal his sentence so long as it was within or below the sentence range of 10 years to life in prison, a fine of $10 million or less, forfeiture of $1,470,00 or less, or the $100 special assessment(A 187), and that the only exception to those waivers was a claim of ineffective assistance of counsel (A 188).

3

Mr. Lightfoot then pleaded guilty to Count Two of the original indictment, saying that he did so voluntarily and of his own free will (A 190). Finding that there was adequate factual basis for the plea, that Mr. Lightfoot understood the consequences of the plea, including the potential sentence that could be imposed, and that Mr. Lightfoot's plea was knowingly and voluntarily entered, the District Court accepted the plea (A 191).

The *Fatico* Hearing

After Mr. Lightfoot pleaded guilty, defense counsel moved *in limine* to prevent the Government from introducing evidence that Mr. Lightfoot raped "Courier-1" on multiple occasions (A 195). Counsel argued that the risk of Mr. Lightfoot being punished for that conduct rather than his narcotics conviction was too great (A 195). Counsel argued that the use of uncharged crimes to enhance a sentence is generally related to the charged crimes, while the rapes alleged in this case were wholly unrelated to Mr. Lightfoot's narcotics trafficking, and is typically not more inflammatory than the charged crime (A 196-98).

In a written response, the Government argued that "Courier-1" transported drugs for Mr. Lightfoot, and that his treatment of her, a coconspirator, was relevant to his history and characteristics and to the need for protection of the public (A 199-203). The prosecutor also argued that there was telephone recording evidence concerning the rape

4

allegation against Mr. Lightfoot, and evidence that Courier-1 told other coconspirators about Mr. Lightfoot raping her (A 266).

The District Court ordered a *Fatico* hearing at which the Government could attempt to prove the alleged rapes (A 264). The court stated that it would not sentence Mr. Lightfoot for anything other than the offense of conviction, but that the rapes, if proven, could be relevant to the history and characteristics of the defendant and the need to protect the public (A 264). The court also stated that "it's not going to become the tail that wags the dog in the sentencing" (A 264).

Defense counsel countered by arguing that the Government had sandbagged the defense by not disclosing its intention to seek to introduce the rape evidence at sentencing, and stated that Mr. Lightfoot would not have waived his right to appeal the sentence had he known about the Government's intention in that regard (A 267). He would have pled to the indictment instead (A 267). Counsel specifically stated that the defense did not know about the Government's intent to use the rape at sentencing before Mr. Lightfoot took the plea (A 268).

The prosecutor did not dispute that the Government had not disclosed its intention to elicit evidence of the rapes at sentencing; he said only that information about the rapes was known to the defense (A 269). In the end, the court stated that the potential remedy for the Government's failure to disclose its intent to use the rape evidence at sentencing would be withdrawal of the plea, which defense counsel

5

specifically declined to pursue (A 270). As a result, the court ruled that the *Fatico* hearing would proceed (A 270).

"Courier 1" testified at the hearing that Mr. Lightfoot and his codefendants had all mistreated and raped her on multiple occasions while using her to transport drugs they bought and sold. After the hearing the District Court stated that, under a preponderance of the evidence standard, it could consider conduct that was not the subject of the conviction in order to "inform the Court's assessment of the defendant's character or danger to the community," and that the conduct considered need not relate to the conviction (A 427). The Court stated that it was mindful of 'the need not to let the tail of the uncharged conduct wag the dog of the crime of conviction," and acknowledged the danger of overreliance on evidence of uncharged misconduct (A 427). The Court found by a preponderance of evidence that Mr. Lightfoot raped Courier-1, who had a "lot of issues, and her whole relationship with all of the individuals involved in both counts of this indictment . . . was very disturbing" (A 428). The Court concluded by saying that "the sentence today is not going to . . . punish Mr. Lightfoot for that which I found he did by a preponderance," but it would consider that evidence on the issues of character and the need to protect the public" (A 430).

6

## **ARGUMENT**

> THE PANEL'S CONCLUSION THAT APPELLANT
> FAILED TO DEMONSTRATE THAT HIS WAIVER OF
> APPEAL WAS UNENFORCEABLE
> MISAPPREHENDED THE IMPORTANCE OF FACTS
> APPEARING IN THE RECORD THAT THE
> GOVERNMENT INTENTIONALLY AVOIDED
> INFORMING THE DEFENSE OF ITS INTENT TO USE
> RAPE ALLEGATIONS TO ENHANCE APPELLANT'S
> DRUG OFFENSE SENTENCE UNTIL AFTER THE
> PLEA AND THAT HE WOULD HAVE PLEADED
> GUILTY TO THE INDICTMENT RATHER THAN
> PURSUANT TO THE PLEA AGREEMENT HAD HE
> KNOWN ABOUT THE GOVERNMENT'S INTENT TO
> USE THE RAPE ALLEGATIONS

The panel that dismissed Mr. Lightfoot's appeal on the ground that his appeal

waiver was enforceable misapprehended the importance both of the record facts and of

the posture of the case. First, counsel argued, and the Government did not dispute, that

the defense had not been informed of its plans to use non-drug rape allegations to

enhance his drug crime sentence (A 269). Only after Mr. Lightfoot entered the plea

agreement and pleaded guilty did the Government move to use rape allegations to

enhance his sentence. Counsel specifically stated that Mr. Lightfoot would not have

entered the plea agreement had he known of the Government's intent.

Second, this case is atypical. Because the base Guidelines range was so high, Mr.

Lightfoot was not weighing whether to enter a plea agreement or go to trial, as is

normally the case. Rather, he was weighing whether to accept a plea agreement or plead

7

guilty to the indictment. This second factor is of critical importance to his waiver argument because the plea agreement afforded him very little benefit as compared with pleading guilty to the indictment. The Guidelines range was 360 months to life in prison. Therefore, pleading guilty to the indictment and a minimum sentence of 15 years in prison rather than 10 would have made little practical difference (A 267); he was facing more than 15 years in prison in any event. Because of the amount of drugs involved, the effect of a § 3553(a) enhancement due to the rape allegations would have a more direct, practical, impact on his ultimate sentence than the crime of conviction. Had Mr. Lightfoot known about the Government's intention to try to enhance the sentence with the rape allegations, he would surely have opted to plead guilty to the indictment, thereby limiting his ultimate sentencing exposure by avoiding an enhancement on rape allegations. That the Government proceeded toward the plea without alerting the District Court that a *Fatico* hearing would be required demonstrates that the Government <u>purposely</u> avoided raising the rape allegations before securing Mr. Lightfoot's plea.

To the extent the panel may have relied on this Court's decision in *United States v. Helm*, 58 F.4th 75, 84 (2d Cir. 2023), for the proposition that the use of uncharged misconduct is proper when the plea agreement permits additional information to be used for that purpose, such reliance would be misplaced. In *Helm*, the Government alleged additional drug weight for sentencing purposes in a drug case. The defendant there could well have expected such additional information to be used. Here, however, the

8

Government hid its intention to use the rape allegations for enhancement by failing to mention them at any point leading up to the plea. Those allegations being uncharged and unrelated to the drug crime of conviction, Mr. Lightfoot could not have anticipated their use for sentencing enhancement. *Helm* does not permit the Government to hide its intent to use unrelated criminal conduct to enhance a sentence when such use cannot reasonably be anticipated by the defendant. The panel's implicit conclusion to the contrary should be reconsidered.

## CONCLUSION

For the reasons set forth above and in his prior submissions before the Court, Mr. Lightfoot requests panel reconsideration or reconsideration *en banc.*

Dated: Garden City, New York
      August 20, 2024

PAUL SKIP LAISURE
Counsel for Petitioner-Appellant
1225 Franklin Avenue, Suite 325
Garden City, New York 11530
(571) 477-1003
pslaisure3@gmail.com

9

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. Proc. 32(a)(7)(B) and the word limit of Rules 35(b) and 40(a) because, excluding the parts exempted by Fed. R. App. Proc. 32(f), this document contains 2,063 words.

This document complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type-style requirements of Fed. R. App. Proc. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Wordperfect in 14-point Garamond.

Dated:     August 20, 2024
           Garden City, New York

                                      _____
                                      Paul Skip Laisure

10

S.D.N.Y.–W.P.
21-cr-463
Seibel, J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of August, two thousand twenty-four.

Present:

> Raymond J. Lohier, Jr.,
> Joseph F. Bianco,
> Alison J. Nathan,
> *Circuit Judges.*

---

United States of America,

> *Appellee,*

v.                                                      23-6715

Pedro Chinnery, et al.,

> *Defendants,*

Jermaine Lightfoot,

> *Defendant-Appellant.*

---

The Government moves to dismiss this appeal as barred by the waiver of appellate rights contained in Appellant's plea agreement. Appellant opposes. Upon due consideration, it is hereby ORDERED that the motion is GRANTED and the appeal is DISMISSED. Appellant has not demonstrated that the waiver of his appellate rights is unenforceable. *See United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court